UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| WANDA D. GARDNER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: 2:14-CV-166-PRC |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Wanda Gardner on June 16, 2014, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 11], filed on September 2, 2014. The Commissioner filed a response on December 10, 2014, and Plaintiff filed a reply on January 12, 2015.

**I. Background**

Plaintiff filed an application for disability insurance benefits with the Social Security Administration on July 20, 2012, for a period of disability beginning on August 1, 2009, through her date last insured, September 30, 2010. Her application was denied twice, and she asked to have a hearing before one of the Agency's administrative law judges (ALJs), which took place on November 20, 2013, before ALJ David R. Bruce. Attorney Thomas J. Scully, III, represented her at the hearing.

On December 20, 2013, the ALJ issued a written opinion, concluding that Plaintiff wasn't disabled. This conclusion was based on the following findings.

> 1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2010.
>
> 2. The claimant did not engage in substantial gainful activity

>    during the period from her alleged onset date of August 1, 2009, through her date last insured of September 30, 2010.
>
> 3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease, arthritis, obesity, and asthma.
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to lift and carry 10 pounds occasionally and less than 10 pounds frequently, sit for 6 hours a day, and stand/walk 2 hours a day. She could never climb ladders, ropes, or scaffolds and had to avoid concentrated exposure to humidity and wetness, atmospheric conditions, such as dust, fumes, odors, gases, and weather, and extremes of cold and heat. She had to alternate standing for 5 minutes after every half hour of sitting.
>
> 6. Through the date last insured, the claimant was capable of performing past relevant work as a data entry clerk. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 1, 2009, the alleged onset date, through September 30, 2010, the date last insured.

(AR 13–18). Plaintiff then sought review before the Agency's Appeals Council, which denied her request on March 24, 2014, leaving the ALJ's decision as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. On May 16, 2014, Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate

Judge to conduct all further proceedings and to order the entry of a final judgment in this case. This Court thus has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the Agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734–35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v.*

*Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Disability Standard

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant

4

numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(I)–(v), 416.920(a)(4)(I)–(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309,

5

313 (7th Cir. 1995).

## IV. Analysis

Plaintiff marshals five arguments for why this case should be remanded to the Agency for further consideration. She contends (1) that the ALJ's RFC analysis failed to build the requisite logical bridge, (2) that the ALJ failed to properly assess her morbid obesity in conjunction with her other impairments, (3) That the ALJ improperly refused to consider medical evidence from after her date last insured, (4) that the ALJ failed to properly evaluate her credibility, and (5) that the ALJ's listing analysis was unsupported. The Court considers each in turn.

### A. Logical Bridge

This case is somewhat unusual in that the ALJ rejected the only expert opinion regarding Plaintiff's physical impairments. That opinion, offered by state-agency medical consultant J.V. Corcoran, M.D., was that there was insufficient evidence regarding Plaintiff's physical impairments prior to the date last insured to find that she had a severe impairment. The ALJ rejected this conclusion, explaining that, in his view, it ran contrary the medical evidence, which demonstrated that Plaintiff's impairments had more than a minimal impact on her ability to do basic work activities during the insured period.

In crafting the RFC, the ALJ looked at the two remaining sources of evidence: non-opinion medical evidence and Plaintiff's subjective complaints. He noted that Plaintiff had testified that she was only able to lift a gallon of milk, that she could sit for no more than thirty minutes, that she could stand for no more than ten to fifteen minutes, that she could walk for five minutes, and that she had to hang onto counters to get around her house. He discounted these subjective complaints, noting that Plaintiff had shown significant improvement during and immediately after the insured

6

period and that there were some inconsistences between her testimony and what she had reported to her doctors.

The ALJ concluded that Plaintiff could lift and carry up to ten pounds occasionally, could sit for six hours in a work day, could stand or walk for up to two hours in a work day, and had to stand for five minutes after every half-hour of sitting. These conclusions reflect Plaintiff's testimony to a certain extent. But some of the limitations in the RFC cannot be accounted for simply by reducing the severity of the limitations Plaintiff testified to. For example, there is no evidence to support the ALJ's conclusions that Plaintiff could sit for six hours or that after sitting for thirty minutes and then standing for five minutes she could resume sitting for another thirty minutes. The ALJ did not explain how he arrived at these restrictions nor can they be readily extrapolated from Plaintiff's testimony. The ALJ also failed to explain his finding that she could stand for up to two hours per day with Plaintiff's use of (at least during some part the insured period) a walker.

The Court is hesitant to reverse in this case. To begin with, Plaintiff has not shown that she was actually more limited than the ALJ concluded—as the ALJ noted, there was no medical evidence in the record suggesting that Plaintiff was more restricted than the RFC finding. In addition, some of the restrictions in the RFC finding do seem to flow from Plaintiff's testimony, albeit reduced in proportion to the ALJ's adverse credibility finding. For example, the ten pound lifting limitations are related to her testimony that she could lift nothing heavier than a gallon of milk, which weighs just under ten pounds. Likewise, the restrictions on exposure to heat, cold, dust, humidity, etc. are plainly designed to accommodate Plaintiff's asthma. But these cannot save his analysis from reversal. Indeed, even these findings are not supported by explanation.

The central problem is that the ALJ's analysis does not explain *why* he settled on those

limitations. It would be overstating it to call it a logical bridge to nowhere, but the side of the bridge connecting to the evidence is at least in fog. The Court therefore remands this case for a clearer explanation. On remand the ALJ should explain the source of the specific limitations, including any limitations on sitting or standing, including if appropriate the need for any assistive devices.

This case is not being reversed because the ALJ failed to develop the record. As mentioned, it is somewhat unusual for the record to contain so little opinion evidence, but courts generally "give[] deference to an ALJ's decision about how much evidence is sufficient to develop the record fully." *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011). The Court leaves to the Agency's discretion the decision of whether additional opinion evidence should be obtained on remand. Additional opinion evidence might be useful. But it might not be, especially since the insured period ended nearly five years ago.

**B. Obesity**

The ALJ mentioned Plaintiff's morbid obesity at a handful of points in his decision, saying that he considered obesity in concert with her other impairments. But Plaintiff is correct that the analysis doesn't give much detail about *how* her morbid obesity affected her. *Cf. Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011). There's no need to determine whether this would independently warrant reversal as this case is already being sent back to the Agency for further proceedings. A more detailed analysis is warranted on remand explaining how the Plaintiff's morbid obesity affected her RFC in combination with her other impairments. *See* SSR 02-1p 2002 WL 34686281 (Sept. 12, 2002).

## C. Depression

Plaintiff also contends that the ALJ wrongly excluded evidence that came into existence after the date last insured. Specifically, she argues that the ALJ erred by not considering later evidence in support of his conclusion that her alleged depression was not medically determinable during the insured period.

In support of this argument, she points to the ALJ's statement that he "did not consider any evidence dated after the date last insured, as it is not material to the determination of disability," (AR 18), arguing that this violates the requirement that the ALJ "consider all relevant evidence, including the evidence regarding the plaintiff's condition at present." *Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir. 2010); *see also Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984). The ALJ's statement, on its own, would be problematic. But context indicates that the ALJ concluded this evidence was "not material" because it did not demonstrate that Plaintiff suffered from depression during the insured period, *not* because it came into existence after the date last insured. *See Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir. 2008). As the ALJ explained at Step Two, he gave great weight to state-agency psychological consultant Randal Horton, Psy.D., who opined that the evidence through 2012 was insufficient to support a finding that Plaintiff had a mental impairment during the insured period. The ALJ noted that he found this assessment "generally consistent with the *totality* of the evidence." (AR 17) (emphasis added).

Thus, the question before the Court is not whether the ALJ wrongly excluded evidence from his consideration based on when it came into existence, but whether his decision that this later evidence did not support a finding that Plaintiff suffered from depression during the insured period was supported. *See Eichstadt*, 534 F.3d at 666.

9

The ALJ gave little credence to Plaintiff's testimony that she had been treated for depression during the insured period and had been prescribed an anti-depressant, as there were no medical records supporting this claim. And he gave great weight to the state-agency reviewing doctor as it was, in his view, consistent with the entire record. He thus did "not ignore an entire line of evidence." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). And his explanation, minimal though it might be, is thus sufficient. *Clifford*, 227 F.3d at 870. However, as discussed below, the credibility discussion should be improved on remand, and this might affect the discussion of the alleged treatment for depression during the insured period. Aside from this, however, there is no reversible error on this issue.

### D. Credibility

The Court gives deference to the ALJ's credibility determination since the case law of this circuit presumes that ALJs are in a better position than a reviewing court to assess the trustworthiness of a witness. *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). A credibility determination will therefore be overturned only if it is "patently wrong, which means that the decision lacks any explanation or support." *Id.* (internal citations omitted).

Plaintiff objects that the ALJ's credibility determination in this case was impermissibly vague as he found her to be "not entirely credible," without explaining in detail which portions of her testimony he found credible and which he didn't. The Seventh Circuit Court of Appeals has criticized such boilerplate assessments on many occasions for exactly this reason. *See Parker v. Astrue*, 597 F.3d 920, 921–22 (7th Cir. 2010); *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). But an ALJ's use of the boilerplate language does not amount to reversible error if he "otherwise points to information that justifies his credibility determination." *Pepper v. Colvin*, 712 F.3d 351,

367–68; *see also Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).

As discussed above, it appears that the ALJ lowered the level of limitation imposed by Plaintiff's symptoms insofar as he thought her subjective complaints were not credible. As explained, this decision didn't account for some of the limitations he included in the RFC finding, preventing meaningful review of that decision. Insofar as that decision was premised on his vague credibility finding, it must be clarified on remand.

Plaintiff also objects that the ALJ focused too much on the medical evidence in discounting her credibility. It is true that "the ALJ cannot reject a claimant's testimony about limitations on her daily activities *solely* by stating that such testimony is unsupported by the medical evidence." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (emphasis added). But that is not what occurred in this case. Plaintiff is correct that the ALJ did note that there was a lack of support for some of her complaints in the medical evidence, but this wasn't the sole basis for his decision. He also looked to her treatment records and Plaintiff's statements to her doctors as evidence of dramatic improvement in her condition. He contrasted this improvement with her testimony that during the insured period she was in great pain and very limited, holding the discrepancy against her.

Plaintiff ackoweldges this, but says that in determining credibility, the issue is not whether there is improvement, but whether the improvement is significant enough to meet the legal criteria of not being classified as disabled. This is true enough: "The key is not whether one has improved (although that is important), but whether [one has] improved enough to meet the legal criteria of not being classified as disabled." *Murphy*, 759 F.3d at 819. But it is a non-sequitur to go from this proposition to the conclusion that the ALJ cannot contrast a claimant's improvement with her testimony in evaluating her *credibility*. (Indeed, the quote from *Murphy* comes in a section

11

discussing RFC, *not* credibility.) The objection is thus irrelevant in this context.

Plaintiff also points out that the ALJ mentioned that Plaintiff had declined to follow up on a surgical referral, contending that he wrongly held this against her since he did not take into account her testimony that she had had breathing trouble in recovery from an earlier knee surgery, which may have affected her decision to undergo additional operations. This objection too misses the mark as the ALJ did not hold this against Plaintiff in the way that she is claiming. He did not say that, if she was suffering as much as alleged, she would actually have followed through with the recommendation. Rather, he mentioned this as part of his discussion of Plaintiff's improvement. Thus, in the next paragraph, he explained that instead of undergoing surgery, Plaintiff sought pain management treatment and saw dramatic gains, noting that she soon rated her pain at only a 2/10 and had stopped using a walker. However, the reasoning could be strengthed on remand by making it clear that the ALJ considered Plaintiff's own explanations for why she did not pursue treatment.

Plaintiff also contends that the ALJ should have looked to the surgery recommendation and the prescription of strong pain-killing medication, as well as Plaintiff's statement that she was starting a new job in early 2010, as *strengthening* her credibility. This is well taken. "[A] claimant's election to undergo serious treatment, such as having surgery and taking 'heavy doses of strong drugs,' indicates that the claimant's complaints of pain are likely credible." *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004)). And "a claimant's dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her pain symptoms." *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014). These possibilities should be considered on remand.

Plaintiff also objects that the ALJ did not discuss her pain or adequately assess her activities of daily living, aggravating and precipitating factors, or medication effects. This objection overstates things as the ALJ did consider the effect of her medication (it resulted in dramatic improvement) and he also discussed her complaints of pain in some detail. Plaintiff is correct, however, that the ALJ said almost nothing about her activities of daily living, and this omission should be remedied on remand. *See* 20 C.F.R. §§ 404.1529(c)(3); 416.629(c)(3).

She also contends that the ALJ should have taken Plaintiff's obesity into account. As discussed above, a more thorough discussion of obesity's impact on her abilities is warranted on remand.

Finally, the Court notes that the ALJ repeatedly mentioned that Plaintiff had never complained of side-effects from her medication, but testified at the hearing that one of her pain drugs made her "loopy." Inconsistencies between what a claimant tells her doctors and she tells the ALJ may of course undercut credibility. But, on remand, the ALJ should also take into account that "some patients may not complain because the benefits of a particular drug outweigh its side effects." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

This case is being remanded on other grounds, and there is no need to determine whether the problems discussed in this opinion are so significant as to render the credibility decision "patently wrong." It is enough for today to say that they should be corrected on remand.

### E. Listing Analysis

The listing analysis in this case is only a few lines long. The ALJ concluded that there was no evidence that Plaintiff's impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. He specifically mentioned that

13

he considered Listings 1.02, 1.03, 1.04. 3.03, and 14.09. He also noted that, though obesity was no longer listed as an impairment, he considered it in relation to her musculoskeletal, respiratory, and cardiovascular systems as required.

Plaintiff argues that the ALJ failed to set forth a sufficient rationale to support this conclusion with respect to Listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine) and also did not take Plaintiff's obesity into account. The significance of these errors, according to Plaintiff, is heightened because no Agency physician provided an opinion on equivalence.

This second point is not well taken. Plaintiff is correct that "longstanding policy requires that the judgment of a physician . . . designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). But she is wrong that the ALJ failed to do so in this case. As mentioned, the ALJ did discuss the opinion of a state-agency physician. That physician had concluded that there was insufficient evidence of a severe impairment during the insured period. It is true that the physician said nothing about equivalence, but it follows *a fortiori* from his conclusion that there were no severe impairments that he didn't think there was any equivalence. The ALJ gave little weight to this opinion, concluding that Plaintiff's impairments had a significant impact on her ability to work during the insured period. There is thus no violation of SSR 96-6p.

As for the rest of the argument, the Seventh Circuit Court of Appeals has held "that even a 'sketchy opinion' is sufficient if it assures us that an ALJ considered the important evidence and enables us to trace its reasoning." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir.

2003) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)). However, as discussed above, a more detailed discussion of Plaintiff's morbid obesity is warranted on remand, and the listing analysis, regardless of whether it might in other circumstances independently have warranted remand, should thus also be expanded. The discussion should be fleshed out and the analysis of equivalence retooled so that the impact of obesity on Plaintiff's other impairments is made clear. A more thorough discussion of Plaintiff's difficulty walking is also appropriate, as this plays into the requirements of Listing 1.02.

## V. Conclusion

Based on the foregoing, the Court **GRANTS** the relief sought in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 11], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

SO ORDERED this 18th day of August, 2015.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT